# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**CAMELLIA D. BROWN**                                                                                           **PLAINTIFF**

**V.**                                                                 **CIVIL ACTION NO. 4:08CV135 TSL-LRA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                                                  **DEFENDANT**

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff appeals the Administrative Law Judge's decision denying her application for Supplemental Security Income ("SSI").[1] The Commissioner opposes the motion and requests an order pursuant to 42 U.S.C. §405(g), affirming the final decision of the Administrative Law Judge.[2] Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Undersigned makes the following recommendation:

### Procedural Background

On February 28, 2005, Plaintiff filed the instant application for Supplemental Security Income under Title XVI of the Social Security Act, alleging she became disabled on June 28, 1991[3]. Her application was denied initially and on reconsideration.[4] On April 28, 2008, Administrative Law Judge Larry J. Stroud rendered an unfavorable decision finding that Plaintiff had not established that she was disabled within the meaning of the Social Security

---

[1] ECF NO. 14, Motion for Summary Judgment

[2] ECF No. 16, Motion to Affirm Commissioner's Decision

[3] R. 94-97

[4] R. 72, 82-84

Act.[5]  On September 24, 2008, the Appeals Council denied Plaintiff's request for review.  Plaintiff now appeals that decision.

## Facts and Medical Evidence

Plaintiff has a history of mental retardation.  Social Security records indicate that she was awarded childhood SSI disability benefits when she was nine years old, and that in the fifth grade, she was placed in special education classes, including classes designated for the "educable mentally retarded" and learning disabled.[6]  Records also show that she only completed the tenth grade and that her only previous work experience was in 1982, for two weeks.[7]  Plaintiff has never married, but has given birth to seven children, who are either being raised by various family members or have been placed in homes by the Department of Human Services.[8]  In June 1991, Plaintiff was awarded disability benefits again for "mental retardation."  She was twenty-one years old.

In addition to a history of mental retardation, Plaintiff has a history of alcohol and drug abuse.  In April 2002, she was admitted to the Laurel Wood Center for a ten-day detoxification program with complaints of alcoholism, depression, and suicidal ideation.[9]  From March through May 2002, Plaintiff received treatment at Weems LifeCare Chemical

---

[5] R. 23-40

[6] R. 3

[7] R. 132, 136

[8] R. 218; 334

[9] R. 193-201

2

Dependency Center for alcohol and cocaine abuse.[10] At some point thereafter, Plaintiff was convicted on drug charges and was incarcerated from July 2002 through February 2005.[11] In accordance with 20 C.F.R. §416. 1325(a), her disability benefits were suspended the first month of her incarceration, and after twelve consecutive months of suspension, her benefits were terminated. *See* 20 C.F.R. §416.1335. She filed the current SSI application after her release from prison.[12]

The relevant medical evidence includes records from psychologists: Dr. Thomas Elliot, Dr. Jan Boggs, Dr. Helen Patterson, and Dr. Kenneth Schneider.[13] The first consultative mental examination was performed by Dr. Elliot in April 2005. During that exam, Plaintiff reported that she had been teased as a child for being "mentally retarded;" she also reported suicidal and homicidal ideation.[14] According to Dr. Elliot, Plaintiff had a very poor education and could not identify similarities between common household objects. Dr. Elliot also noted that Plaintiff presented poor to fair judgment, and that the reliability of her statements was between fair and poor.[15] He also determined that her "intellectual activities are within mild mental retardation range to the borderline range,"[16] and that she

---

[10] R. 202-215

[11] R. 218, 137

[12] R. 137, 69

[13] R. 217-221

[14] Id.

[15] R. 217

[16] R. 220-221

3

would be unable to talk adequately to co-workers and supervisors, or maintain routine and repetitive tasks.[17]  Dr. Elliot ultimately diagnosed Plaintiff with post traumatic stress disorder and rule-out mental retardation.

In May 2005, Dr. Jan Boggs performed a second consultative psychological evaluation of Plaintiff, and found her unreliable and uncooperative.[18]  Specifically, Dr. Boggs felt that Plaintiff was grossly malingering during the administration of the Wechsler Adult Intelligence Scale, Third Addition (WAIS-III) I.Q. Test.[19]  She did not attempt to sound out words or letters; miscounted numbers; and, did not adhere to instructions.[20]  And, like in her interview with Dr. Elliot, Plaintiff could not identify similarities between common household objects. [21]

In June 2005, state agency psychologist, Dr. Helen Patterson, submitted a Psychiatric Review Technique Form concerning Plaintiff's mental impairments, and found insufficient evidence to determine whether Plaintiff suffered from certain mental disorders.[22]  Dr. Patterson specifically noted that Plaintiff's medically determinable impairment does not satisfy the diagnostic criteria of Listing 12.04.  She made no specific notation, however,

---

[17] R. 221

[18] R. 223-226

[19] R. 224-225

[20] R. 225

[21] Id.

[22] R. 227,230

4

regarding Listing 12.05 for mental retardation. She also observed that Plaintiff malingered on testing, demonstrated poor credibility, and that Plaintiff's lack of ongoing treatment prevented her from assessing Plaintiff's functional capacity.[23]

Plaintiff's last psychological evaluation before the administrative hearing was performed by Dr. Kenneth Schneider in March 2008, at the request of Plaintiff's counsel. Dr. Schneider administered a second WAIS-III I.Q. Test, which showed Plaintiff exhibited moderate mental retardation, and scored a 53 on the verbal I.Q. portion, a 51 on the performance I.Q. portion, and a 48 on the full scale I.Q. portion.[24] Dr. Schneider's report, however, indicates that he did not consider how Plaintiff's substance abuse problems affected her I.Q. scores, nor did he consider that Plaintiff's mother provided much of the information in his report because of Plaintiff's difficulty communicating. He did note, however, that Plaintiff exhibited significant paranoia and had difficulty concentrating, conversing normally, and controlling her emotions.[25] At one point, he reports Plaintiff jumped from her seat during the interview and made threatening gestures after becoming angry.[26] In the end, Dr. Schneider's diagnosed Plaintiff with major recurring depression with psychosis; intermittent explosive disorder; and moderate mental retardation.[27]

---

[23] R. 239

[24] R. 335

[25] Id.

[26] Id.

[27] R. 336

5

**Standard of Review**

This Court's review of the ALJ's decision that a claimant is not disabled is limited to two basic inquiries: (1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (*citing Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Fifth Circuit defines substantial evidence as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995), *citing Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992). Any findings by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

A claimant's entitlement to disability benefits hinges on whether he can establish his inability "to engage in any substantial gainful activity by reason of [a] medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). The Commissioner reviews the evidence of disability offered by the claimant and evaluates the evidence by using a sequential evaluation.[28]   The burden of proof on the

---

[28] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantially gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Sub-part P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also* **McQueen v. Apfel**, 168 F.3d 152, 154 (5th Cir. 1999).

first four steps falls on the claimant; the burden of proof on the last step --whether a claimant can perform work existing in significant numbers in the national economy -- rests with the Commissioner. Significantly, the Commissioner only has the burden of proof on the fifth step.

## Findings of the Administrative Law Judge

After reviewing the evidence, ALJ Stroud found Plaintiff was not disabled because she was capable of performing a significant number of jobs in the national economy if she stopped abusing drugs and alcohol.[29] The ALJ specifically found that though Plaintiff has severe impairments of borderline intellectual functioning and substance abuse disorder, these impairments do not meet or medically equal any Listing.[30]  Plaintiff's intellectual functioning, in particular, was not so severe that it met or medically equaled Listing 12.05.[31] Thus, the ALJ ruled that if Plaintiff stopped abusing drugs and alcohol, Plaintiff would retain the residual capacity to perform the full range of work at all exertional levels. Although she would be limited to performing unskilled, routine, repetitive tasks requiring no more than one or two step instructions, Plaintiff could still work.[32]

On appeal, Plaintiff only challenges the ALJ's finding that her intellectual functioning impairment does not meet or medically equal the requirements of Listing 12.05 (B),

---

[29] R. 36

[30] R. 19-20

[31] R. 33-35

[32] R. 35-36

7

concerning mental retardation. To meet the requirements of Listing 12.05, Plaintiff must show that her condition satisfies both the diagnostic description of mental retardation outlined in the introductory paragraph and one of the four (4) severity criteria enumerated in 12.05 (A), (B), (C) or (D). 20 C.F.R. pt. 404, subpt. P, app. 1 §12.05. The diagnostic description defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." Id. Section 12.05(B) requires that Plaintiff established she has a "valid verbal, performance, or full scale IQ score of 59 or less." Id.

In short, Plaintiff submits that she meets both criteria, and that *res judicata* precludes the Commissioner from determining otherwise. She argues primarily that *res judicata* proves she met the diagnostic criteria of Listing 12.04 in June 1991, while the I.Q. scores obtained by Dr. Schneider shows that she met the severity criteria. Alternatively, she argues that *res judicata* establishes she met the severity criteria of Listing 12.05 in June 1991, and that the ALJ erred in failing to assess whether she manifested deficits in adaptive functioning before she turned twenty-two (22). In any event, Plaintiff's contends that either the diagnostic or the severity criteria were adjudicated when her SSI application was approved in 1991, and as such, they are binding on the Commissioner in this case. The Commissioner maintains *res judicata* does not bar the ALJ from considering whether Plaintiff met the diagnostic or the severity criteria because her earlier SSI application was based on an entirely different record.

**Statement of the Issues**

The primary issue is whether substantial evidence supports the ALJ's determination that Plaintiff failed to meet her burden of proving her impairments met or medically equaled listing 12.05 (B).  So, in evaluating this issue, the Undersigned considers:  (1) whether substantial evidence supports the ALJ's determination that I.Q. scores reported by Dr. Schneider were invalid; (2) whether the ALJ was required to address whether Plaintiff manifested deficits in adaptive functioning prior to age twenty-two (22), or if he was precluded by the doctrine of *res judicata* because the issue was adjudicated when her SSI application was approved in 1991; (3) whether the Commissioner's approval of Plaintiff's 1991 application was necessarily based on a determination that Plaintiff met the severity criteria, and is therefore subject to *res judicata*; and, (4) whether the ALJ committed reversible error by failing to obtain a medical judgment on whether Plaintiff's impairments met or equaled Listing 12.05, in violation of Social Security Ruling 96-6p.

**1.    Whether substantial evidence supports the ALJ's determination that I.Q. Scores reported by Dr. Schneider were invalid.**

To support her mental retardation claim for disability benefits, Plaintiff relies heavily on Dr. Schneider's report showing she scored a verbal I.Q. score of 53, a performance I.Q. of 51, and a full scale I.Q. of 48 on the WAIS-III I.Q. test.[33]  She also cites his finding that she "suffers from a combination of mental retardation, extreme emotional dysfunction and [an] inability to regulate impulses and emotions;" as well as his finding that she is "prone to

---

[33] R. 335

sudden aggressiveness and would be unable to follow even simple instructions, or to interact normally in the work place with others."[34] The ALJ declined, however, to assign significant weight to Dr. Schneider's report. Because Dr. Schneider was unaware of Plaintiff's psychiatric diagnoses and substance abuse problems, the ALJ reasoned that Dr. Schneider had not considered how Plaintiff's substance abuse affected her I.Q. scores. Also undermining the validity of the scores, was Plaintiff's history of malingering during psychiatric examinations.

Following the ALJ's decision and at the request of counsel, Dr. Schneider submitted a letter to the Appeals Council, advising that he was providing the following supplemental statement to his psychological evaluation:

> Ms. Brown's IQ scores were obtained through a valid administration of the WAIS-III. Ms. Brown's test response pattern is self-consistent and is also consistent with her clinical presentation. There were no indications of malingering or random responding. Thus, Ms. Brown's IQ scores are valid and an accurate representation of her actual intellectual ability.[35]

Plaintiff contends this letter constitutes new and material evidence that undermines the ALJ's determination that her I. Q. scores were invalid. Accordingly, she submits the ALJ's finding that she does not have a valid verbal, performance, or full I.Q. score of 59 or less is not supported by substantial evidence and must be reversed.

The controlling law is this Circuit is that this Court may not re-weigh the evidence,

---

[34] R. 32

[35] R. 45

10

try the case *de novo*, or substitute its judgement for that of the ALJ, *Hollis v. Bowen*, 837 F. 2d 1378, 1383 (5th Cir. 1988), even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F. 3d 431, 434 (5th Cir. 1994). The Court finds no such evidence here. Dr. Schneider's letter, which was considered by the Appeals Council, merely reinforced his previous psychological evaluation, and thus was cumulative at best. *See Bradley v. Bosen*, 809 F. 2d 1054, 1058 (5th Cir. 1987) (letter drafted by examining physician supporting earlier conclusion of another physician that Plaintiff was disabled added 'little if anything' and was thus "cumulative, at best."). Thus, no remand is warranted on this issue.

> **2.    Whether the ALJ was required to address whether Plaintiff manifested deficits in adaptive functioning prior to age 22, or was precluded by the doctrine of *res judicata* because the issue was adjudicated when her SSI application was approved in 1991.**

The Court finds Plaintiff's arguments regarding the adaptive functioning requirement of Listing 12.05 to be somewhat incongruent. On the one hand, she argues that ALJ Stroud erred in failing to address whether she suffered from deficits of adaptive functioning before she was twenty-two years old; yet, on the other hand, she argues *res judicata*[36] barred

---

[36] The Commissioner suggests that Plaintiff misconstrues the term "*res judicata*" in support of her claim that the Commissioner is barred from addressing whether she obtained a valid I.Q. score because the issue was already adjudicated when her application was approved in 1991. (Commissioner's Rebuttal, p. 2, FN 1). It would appear that Plaintiff intends to assert the doctrine of collateral estoppel:

> "Res judicata" has been used [ ] as a general term referring to all of the ways in
> which one judgment will have a binding effect on another. That usage is and
> doubtless will continue to be common, but it lumps under a single name two
> quite different effects of judgments. The first is the effect of foreclosing any
> litigation of matters that never have been litigated, because of the determination
> that they should have been advanced in an earlier suit. The second is the effect
> of foreclosing relitigation of matters that have once been litigated and decided.

11

consideration of the issue because it was adjudicated when her SSI application was approved in 1991 for mental retardation. The Court presumes Plaintiff makes these arguments in the alternative, and addresses them both below under the theory of collateral estoppel, because it appears Plaintiff actually seeks to collateral estop the Commissioner from contesting whether she suffered from deficits in adaptive functioning.

The doctrine of collateral estoppel, or issue preclusion, precludes the relitigation of facts or issues that were, or could have been, litigated to final judgment between the parties.[37] Collateral estoppel "does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings." *Copeland v. Merrill Lynch & Co., Inc.*, 47 F. 3d 1415, 1422 (5th Cir. 1995). As the Commissioner argues, when Plaintiff's initial SSI application was approved in 1991, social security regulations did not require claimants to prove that they met both the diagnostic description of Listing 12.05 and

---

> The first of these, preclusion of matters that were never litigated, has gone under the name, 'true res judicata' or the names, 'merger' and 'bar.' The second doctrine, preclusion of matters that have once been decided, has usually been called 'collateral estoppel.'

*See* Black's Law Dictionary 279, 1336-37 (8th ed. 2004), *citing* Charles Alan Wright, *The Law of Federal Courts* § 100A, at 722-23 (5th ed. 1994).

[37] With respect to DIB claims specifically, collateral estoppel has been codified in 20 C.F.R. § 404.950(f), which provides as follows:

> (f) Collateral estoppel– issues previously decided. An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under but arising under a different tile of the Act . . . . If this happens, the administrative law judge will not consider the issue again, but will accept the factual finding made in a previous determination or decision unless there are reasons to believe that it was wrong.

12

the severity criteria in 12.05 (A) - (D). *See Randall v. Astrue*, 570 F. 3d 651, 659 n. 14(5th Cir. 2009)(prior to 2000, a claimant did not have to prove both the capsule definition and the severity criteria). Before the 2000 revisions, claimants could meet the listing by proving the severity criteria alone. Id. at 657 (*citing Selders v. Sullivan*, 914 F. 2d 614, 619 (5th Cir. 1990). Plaintiff's current application, however, is subject to the 2000 amendment which requires claimants to satisfy both the diagnostic description of adaptive functioning and the severity criteria. *See Randall*, at 659 (5th Cir. 2009) (the severity criteria enumerated in 12.05 (A) - (D) do not "relieve claimants of the initial burden of demonstrating that their impairments satisfies the introductory paragraph's diagnostic description.") Thus, even though Plaintiff's first SSI application was approved in 1991, the Commissioner maintains it does not necessarily establish that the approval was based on a finding that she suffered the requisite deficits in adaptive functioning to trigger collateral estoppel.

Plaintiff concedes in rebuttal that the Commissioner is correct about the 2000 revisions to Listing 12.05, and is also correct that no finding was necessarily made about her deficits in adaptive functioning in 1991. She also appears to concede that the doctrine of *"res judicata"* (collateral estoppel) does not therefore bar the Commissioner from considering whether her current SSI application establishes she had deficits in adaptive functioning before she was twenty-two years old. As discussed below, however, she does not abandon her *"res judicata"* (collateral estoppel) claim entirely.

13

But first, the Court reviews Plaintiff's alternative claim that ALJ Stroud erred in failing to address whether she suffered from deficits of adaptative functioning before she was twenty-two years old. This issue is irrelevant. The ALJ had already determined that she did not meet or medically equal any of the severity criteria of listing 12.05. In her rebuttal, in fact, Plaintiff acknowledges that the ALJ was not required to assess whether she manifested deficits in adaptive functioning prior to age twenty-two, because this was only relevant to the extent that she had successfully established that her impairment met or equaled one of the severity criteria outlined in 12.05 (A) -(D) (Plaintiff's Rebuttal, p. 7).

Plaintiff argues, however, that the adaptive functioning analysis becomes relevant because the approval of her SSI application for mental retardation in June 1991, confirms that she successfully established that her impairment met or equaled one of the severity criteria in Listing 12.05. Thus, Plaintiff submits that it is the Commissioner's finding on *this* issue that is subject to *"res judicata"* (collateral estoppel).

### 3. Whether the Commissioner's approval of Plaintiff's 1991 application was necessarily based on a determination that Plaintiff met the severity criteria of Listing 12.05, and is therefor subject to *res judicata*.

Plaintiff has now made several concessions in her rebuttal brief. She has effectively abandoned her claim that the Commissioner's June 1991 finding that she suffered from deficits of adaptive functioning prior to age twenty-two (22) is subject to *res judicata*. She has acknowledged that prior to the 2000 Amendment to Listing 12.05, claimants were not required to prove the diagnostic description and the severity criteria. She has also conceded that the "Commissioner is correct in his contention that no finding about Ms. Brown's

14

deficits in adaptive functioning prior to age 22 was entered in 1991." (Plaintiff's Rebuttal, pp. 3, 5). But from these concessions, Plaintiff deduces that the Commissioner's 1991 disability finding must have been necessarily based on a determination that she satisfied the severity criteria of 12.05; in particular, that she had a valid verbal, performance, or full scale IQ score of 69 or less, in accordance with either severity criteria 12.05(B) or 12.05 (D).[38] This must have been the case, Plaintiff maintains, because record evidence does not support that she met the severity criteria for either 12.05(A) or 12.05(C). So, Plaintiff concludes that whether she had a valid verbal, performance, or a full scale I.Q. of 69 or less, must have been adjudicated by the Commissioner in June 1991, and is therefore subject to *res judicata*.

But the controlling law in this Circuit instructs that *res judicata* applies to "the record on which the determination was made." *Taylor v. Heckler*, 742 F. 2d 253, 255 (5th Cir. 1984). The same principle applies to collateral estoppel. Thus, even if this Court were to accept Plaintiff's *res judicata* (collateral estoppel) argument, Plaintiff cannot establish that the necessary elements of *res judicata* are present. She has not shown that in 1991, that she presented evidence that she met Listing 12.05 (B) or 12.05 (D), or for that matter, that the Commissioner made such a finding. Other than an "Abbreviated DIB Review Sheet," indicating that Plaintiff was awarded disability due to mental retardation, this Court is without any evidence concerning the 1991 evidentiary record or the basis for that decision.

---

[38] Listing 12.05(B) requires evidence of a valid verbal, performance, or fulls care I.Q. score of 59 or less, while Listing 12.05 (D) requires evidence of a valid verbal, performance or full scale I.Q. score of 69 or less.

15

Plaintiff even acknowledges that "the [current] record does not reflect the I.Q. scores upon which the Commissioner relied in finding Ms. Brown's intellectual impairment presumptively disabling in 1991." (Plaintiff's Brief, 11). Plaintiff also overlooks the alternative grounds for the approval of her 1991 application: i.e., that her impairment could have met Listings 12.05(A) and 12.05(D) without a valid I.Q. score of 69 or less, or that her impairment could have been medically equivalent to Listing 12.05 (C) without a valid I.Q. score of 69 or less.

Plaintiff's entire argument is speculative. Without the benefit of the 1991 evidentiary record, this Court is without a sufficient basis for finding that the earlier allowance of her application for SSI rested on the facts she contends. Plaintiff's argument on this issue is therefore rejected.

**4. Whether the ALJ committed reversible error by failing to obtain a medical judgment on whether Plaintiff's impairments met or equaled Listing 12.05, in violation of Social Security Ruling 96-6p.**

In her final assignment of error, Plaintiff argues the record in this case does not contain the necessary expert medical judgment to support a Step 3 finding on medical equivalence for Listing 12.05. For relief, she requests this Court remand this matter for a new administrative hearing so that expert testimony can be given on the medical equivalence of Plaintiff's intellectual impairment. The Commissioner responds that substantial evidence supports the ALJ's medical equivalance determination and it should be affirmed.

In support, the Commissioner points to Dr. Patterson's Psychiatric Review Technique Form (PRTF), which assessed whether Plaintiff's mental impairments were medically

equivalent to a listed impairment.[39]  Plaintiff acknowledges that this form, when signed by a state agency psychological consultant, satisfies Social Security Ruling 96-6p's requirement that an ALJ must receive expert opinion evidence on the issue of medical equivalence before ruling at Step 3.  It is not entirely clear, however, that Dr. Patterson submitted an expert opinion on the impairment at issue.  She indicates on the form, for example, that Plaintiff's medically determinable impairment does not satisfy the diagnostic criteria of Listing 12.04 (Affective Disorders).[40]  But she makes no specific notation regarding Listing 12.05.  This section of the form is simply left blank. Equally troubling is Dr. Patterson's notation that Plaintiff's malingering, poor credibility and lack of ongoing treatment leave "insufficient evidence upon which to assess her functional capacity."[41]   Because Dr. Patterson's assessment does not show she considered the medical equivalence of Plaintiff's mental retardation to Listing 12.05, Plaintiff submits the ALJ's reliance on her medical judgment was error.  The error was prejudicial because had the ALJ sought additional evidence as to whether Plaintiff's intellectual deficiency is medically equal to Listing 12.05, particularly given the relevancy of the Commissioner's approval of her 1991 application due to mental retardation, a physician *might* have found that Plaintiff's impairments met or medically equaled Listing 12.05.

Whether the ALJ erred on this point, requires remand only if Plaintiff was prejudiced

---

[39] R. 71, 227-240

[40] R. 230

[41] R. 239

17

by this error. *See Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000).  A plaintiff is prejudiced when additional evidence *might* have led to a different result. *Newton; Brock v. Chater*, 84 F.3d 726 (5th Cir. 1996).  The Court agrees that additional evidence might lead to a finding of disability, given the Commissioner's 1991 determination of disability due to mental retardation.  Though Plaintiff fails to establish that the prior disability determination is entitled to "res judicata" (collateral estoppel) effect, the prior determination is not without relevance.  The Undersigned therefore concludes that this case should be remanded for a new administrative hearing and reconsideration of a medical opinion on the equivalency as to Listing 12.05, in accordance with SSR 96-6P.

## Recommendation

The Court finds the ALJ erred in making a determination that Plaintiff failed to meet Listing 12.05 because there was no expert opinion as to this Listing, as required by SSR 96-6p.  All other assignments of error by Plaintiff lack sufficient basis in law and are rejected.

It is therefore the opinion of the Undersigned United States Magistrate Judge that Plaintiff's Motion for Summary Judgment should be granted in part and denied in part; and, that Defendant's Motion for Order Affirming the Commissioner should be granted in-part and denied in part for the reasons set forth herein.  The Undersigned recommends that this matter be remanded for a new administrative hearing and the reconsideration of a medical opinion on the equivalency as to Listing 12.05, in accordance with SSR 96-6P.

The parties are hereby notified that failure to file written objections to the proposed

findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009).

    This the 8th day of October 2010.

                                                       /s/ Linda R. Anderson
                                  UNITED STATES MAGISTRATE JUDGE